UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

LARRY MONDRAGON,              )
                              )
    Petitioner,                )   CASE NO. 2:07-cv-00938-RSL-JLW
                              )
    v.                         )
                              )
R.J. SUBIA, *et al.*,          )   REPORT AND RECOMMENDATION
                              )
    Respondents.               )
_____ )

I.    SUMMARY

Petitioner Larry Mondragon is currently incarcerated at the Mule Creek State Prison in Ione, California. He was convicted by a jury of second degree murder in Contra Costa County Superior Court on April 7, 1983, and is currently serving a sentence of 20-years-to-life with the possibility of parole.[1] He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2005 denial of parole by the Board of Parole Hearings of the State of California (the "Board").[2] Respondent has filed an answer to the petition together

---

[1] Petitioner's original sentence of 15-years-to-life for the second degree murder conviction was adjusted to 20-years-to-life when he was subsequently convicted of a "non-controlling offense that is to run concurrent with the life term for resisting an officer with force and violence" while incarcerated at the California Men's Colony in San Luis Obispo. (*See* Docket 7, Exhibit 1 at 1; *id*., Ex. 2 at 1, and 22-25.)

[2] The Board of Parole Hearings replaced the Board of Prison Terms, which was abolished on July 1, 2005. *See* California Penal Code § 5075(a).

REPORT AND RECOMMENDATION -1

with relevant portions of the state court record, and petitioner has filed a traverse in reply to the answer. The briefing is now complete and this matter is ripe for review. The Court, having thoroughly reviewed the record and briefing of the parties, recommends the petition be denied and this action be dismissed with prejudice.

## II. BACKGROUND

In September 1982, petitioner observed his estranged wife's babysitter, Margaret Rivera, slap his five-year-old daughter on the hand. (*See* Dkt. 7, Ex. 2 at 12-13.) Petitioner, who was intoxicated, began shouting insults and threatening to kill Rivera for striking his child. (*See id*. at 13.) When his wife, who was also intoxicated, attempted to intervene, petitioner pushed her to the ground. (*Id*.) Rivera attempted to leave the apartment, but petitioner slapped her and continued to threaten her with bodily harm. (*Id*.) In an attempt to stop petitioner's behavior, petitioner's brother-in-law, Frank De La Cruz, pushed him. (*Id*.) Although De La Cruz was unarmed, petitioner pulled a knife he was carrying and stabbed De La Cruz on his right side. (*Id*. at 14.) A witness handed De La Cruz a crowbar to help him defend himself, but petitioner then stabbed De La Cruz in the chest. (*Id*.) When the fight ended, petitioner had knocked De La Cruz to the ground with a chair, stabbed him a total of four times, and struck him twice in the head with the crowbar. (*Id*.) De La Cruz was transported to the hospital, where he was pronounced dead. (*Id.*)

Petitioner was convicted by a jury of second degree murder in Contra Costa County Superior Court on April 7, 1983. He is currently serving a sentence of 20-years-to-life with the possibility of parole. (*See id*., Ex. 1 at 1; Ex. 2 at 1, and 22-25.) His minimum eligible parole date is July 22, 1993. (See *id*., Ex. 2 at 1.) Thus, petitioner has been incarcerated for

the past twenty-six years.

The parole denial which is the subject of this petition took place after a parole hearing held on August 24, 2005. This was petitioner's fifth application. (*See* Dkt. 7, Ex. 4 at 1.) His previous applications were also denied. After denial of his 2005 application, petitioner filed habeas corpus petitions in the Contra Costa County Superior Court, California Court of Appeal, and California Supreme Court. Those petitions were unsuccessful. This federal habeas petition followed. Petitioner contends his 2005 denial by the Board violated his Fifth and Fourteenth Amendment Due Process rights. Thus, petitioner does not challenge the validity of his conviction, but instead challenges the Board's 2005 decision finding him unsuitable for parole.

III.     STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this petition because it was filed after the enactment of AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Because petitioner is in custody of the California Department of Corrections pursuant to a state court judgment, 28 U.S.C. § 2254 provides the exclusive vehicle for his habeas petition. *See White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir.), *cert. denied*, 543 U.S. 991 (2004) (providing that § 2254 is "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction."). Under AEDPA, a habeas petition may not be granted with respect to any claim adjudicated on the merits in state court unless petitioner demonstrates that the highest state court decision rejecting his petition was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2).

As a threshold matter, this Court must ascertain whether relevant federal law was "clearly established" at the time of the state court's decision. To make this determination, the Court may only consider the holdings, as opposed to dicta, of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000). In this context, Ninth Circuit precedent remains persuasive but not binding authority. *See id.* at 412-13; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

The Court must then determine whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. At all times, a federal habeas court must keep in mind that it "may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be [objectively] unreasonable." *Id.* at 411.

In each case, the petitioner has the burden of establishing that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law.

REPORT AND RECOMMENDATION -4

*See* 28 U.S.C. § 2254; *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). To determine whether the petitioner has met this burden, a federal habeas court looks to the last reasoned state court decision because subsequent unexplained orders upholding that judgment are presumed to rest upon the same ground. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Medley v. Runnels*, 506 F.3d 857, 862 (9th Cir. 2007).

Finally, AEDPA requires federal courts to give considerable deference to state court decisions, and state courts' factual findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1). Federal courts are also bound by a state's interpretation of its own laws. *See Murtishaw v. Woodford*, 255 F.3d 926, 964 (9th Cir. 2001) (citing *Powell v. Ducharme,* 998 F.2d 710, 713 (9th Cir. 1993)).

IV. FEDERAL HABEAS CHALLENGES TO STATE PAROLE DENIALS

A. *Due Process Right to be Released on Parole*

Under the Fifth and Fourteenth Amendments to the United States Constitution, the government is prohibited from depriving an inmate of life, liberty or property without the due process of law. U.S. Const. amends. V, XIV. A prisoner's due process claim must be analyzed in two steps: the first asks whether the state has interfered with a constitutionally protected liberty or property interest of the prisoner, and the second asks whether the procedures accompanying that interference were constitutionally sufficient. *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989); *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006).

Accordingly, our first inquiry is whether petitioner has a constitutionally protected liberty interest in parole. The Supreme Court articulated the governing rule in this area in *Greenholtz v. Inmates of Neb. Penal,* 442 U.S. 1 (1979), and *Board of Pardons v. Allen,* 482

U.S. 369 (1987). *See McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) (applying "the 'clearly established' framework of *Greenholtz* and *Allen"* to California's parole scheme). The Court in *Greenholtz* determined that although there is no constitutional right to be conditionally released on parole, if a state's statutory scheme employs mandatory language that creates a presumption that parole release will be granted if certain designated findings are made, the statute gives rise to a constitutional liberty interest. *See Greenholtz*, 442 U.S. at 7, 12; *Allen*, 482 U.S. at 377-78.

As discussed *infra*, California statutes and regulations afford a prisoner serving an indeterminate life sentence an expectation of parole unless, in the judgment of the parole authority, he "will pose an unreasonable risk of danger to society if released from prison." Title 15 Cal. Code Regs., § 2402(a). The Ninth Circuit has therefore held that "California's parole scheme gives rise to a cognizable liberty interest in release on parole." *McQuillion*, 306 F.3d at 902. To similar effect, *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) held that California Penal Code § 3041 vests all "prisoners whose sentences provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." This "liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." *Biggs v. Terhune*, 334 F.3d 910, 915 (2003). *See also Sass*, 461 F.3d at 1127.

Because the Board's denial of parole interfered with petitioner's constitutionally-protected liberty interest, this Court must proceed to the second step in the procedural due process analysis and determine whether the procedures accompanying that interference were constitutionally sufficient. "[T]he Supreme Court [has] clearly established that a parole

REPORT AND RECOMMENDATION -6

board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record.'" *Irons*, 505 F.3d at 851 (citing *Superintendent v. Hill*, 472 U.S. 445, 457 (1985) (holding the "some evidence" standard applies in prison disciplinary proceedings)). The "some evidence" standard requires this Court to determine "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. Although *Hill* involved the accumulation of good time credits rather than release on parole, later cases have held that the same constitutional principles apply in the parole context because both situations directly affect the duration of the prison term. *See e.g., Jancsek v. Or. Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987) (adopting the "some evidence" standard set forth by the Supreme Court in *Hill* in the parole context); *accord*, *Sass*, 461 F.3d at 1128-29); *Biggs*, 334 F.3d at 915; *McQuillion*, 306 F.3d at 904.

"The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact," however. *Hill*, 472 U.S. at 456. Similarly, the "some evidence" standard is not an invitation to examine the entire record, independently assess witnesses' credibility, or re-weigh the evidence. *Id.* at 455. Instead, it is there to ensure that an inmate's loss of parole was not arbitrarily imposed. *See id.* at 454. The Court in *Hill* added an exclamation point to the limited scope of federal habeas review when it upheld the finding of the prison administrators despite the Court's characterization of the supporting evidence as "meager." *See id.* at 457.

    B.    *California's Statutory and Regulatory Scheme*

In order to determine whether "some evidence" supported the Board's decision with respect to petitioner, this Court must consider the California statutes and regulations that

REPORT AND RECOMMENDATION -7

govern the Board's decision-making. *See Biggs*, 334 F.3d at 915. Under California law, the Board is authorized to set release dates and grant parole for inmates with indeterminate sentences. *See* Cal. Penal Code § 3040 and 5075, *et seq*. Section 3041(a) requires the Board to meet with each inmate one year before the expiration of his minimum sentence and normally set a release date in a manner that will provide uniform terms for offenses of similar gravity and magnitude with respect to their threat to the public, as well as comply with applicable sentencing rules. Subsection (b) of this section requires that the Board set a release date "unless it determines that the gravity of current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration." *Id.*, § 3041(b). Pursuant to the mandate of § 3041(a), the Board must "establish criteria for the setting of parole release dates" which take into account the number of victims of the offense as well as other factors in mitigation or aggravation of the crime. The Board has therefore promulgated regulations setting forth the guidelines it must follow when determining parole suitability. *See* 15 CCR § 2402, *et seq*.

Accordingly, the Board is guided by the following regulations in making a determination whether a prisoner is suitable for parole:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other

| | |
|---|---|
| 01 | commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or |
| 02 | control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on |
| 03 | the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern |
| 04 | which results in a finding of unsuitability. |

15 CCR § 2402(a) and (b). Subsections (c) and (d) also set forth suitability and unsuitability factors to further assist the Board in analyzing whether an inmate should be granted parole, although "the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel." 15 CCR § 2402(c).

In examining its own statutory and regulatory framework, the California Supreme Court in *In re Lawrence* recently held that the proper inquiry for a reviewing court is "whether some evidence supports the *decision* of the Board … that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." *In re Lawrence*, 44 Cal.4th 1181, 1212 (2008). The court also asserted that the Board's decision must demonstrate "an individualized consideration of the specified criteria, but "[i]t is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." *Id*. at 1204-05, 1212. As long as the evidence underlying the Board's decision has "some indicia of reliability," parole has not been arbitrarily denied. *See Jancsek*, 833 F.2d at 1390. As the California courts have continually noted, the Board's discretion in parole release matters is very broad. *See Lawrence*, 44 Cal.4th at 1204. Thus, the penal code, corresponding regulations, and California law clearly establish that the fundamental consideration in parole decisions is public safety and an assessment of a prisoner's current dangerousness. *See id.*, at

REPORT AND RECOMMENDATION -9

1205-06.

C. *Summary of Governing Principles*

By virtue of California law, petitioner has a constitutional liberty interest in release on parole. The parole authorities may decline to set a parole date only upon a finding that petitioner's release would present an unreasonable present risk of danger to society if he is released from prison. Where the parole authorities deny release, based upon an adverse finding on that issue, the role of a federal habeas court is narrowly limited. It must deny relief if there is "some evidence" in the record to support the parole authority's finding of present dangerousness. The penal code, corresponding regulations, and California law clearly support the foregoing interpretation.

V.  PARTIES' CONTENTIONS

Petitioner contends that the Board violated his state and federal due process rights by finding him unsuitable for parole without some evidence that he poses an unreasonable risk of danger to society if released from prison.[3] (*See* Dkt. 1 at 5.) Specifically, petitioner claims that the Board found him unsuitable based solely upon the facts of the commitment offense. (*Id*. at 5-6.) Petitioner also argues that the Board failed to consider any evidence suggesting that petitioner was suitable for parole, or give appropriate weight to petitioner's most recent psychological report. (*Id*.) Although petitioner cites the U.S. Court of Appeals for the Ninth Circuit's decision in *Hayward v. Marshall* as support for his petition, the panel decision in that case has been withdrawn and the case is currently being reheard *en banc* by that court.

---

[3] We do not reach petitioner's claim that his state due process rights were violated, as state claims are not cognizable in a federal habeas petition. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (asserting that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

*See* 512 F.3d 536 (9th Cir. 2008), *reh'g en banc granted,* 527 F.3d 797 (9th Cir. 2008) (providing that "the three-judge panel opinion shall not be cited as precedent by or to any court of the Ninth Circuit."). (*See also* Dkt. 10 at 1.) Petitioner's citation of the California Supreme Court's decision in *Lawrence* as an additional authority was proper, however. (*See* Dkt. 12 at 3.)

Respondent claims that petitioner does not have a constitutionally protected liberty interest in being released on parole, that the "some evidence" standard is inapplicable in this context, and that even if he does have a protected liberty interest, the Board adequately predicated its denial of parole on "some evidence." (*See* Dkt. 7 at 4, and 7-12.) Accordingly, respondent argues that petitioner's due process rights were not violated by the Board's 2005 decision, and the Contra Costa County Superior Court's Order upholding the Board's 2005 parole denial was not an unreasonable application of clearly established federal law. (*See id*. at 4-5, 7, and 12.)

VI. ANALYSIS OF RECORD IN THIS CASE

A. *Analysis*

The Board based its decision that petitioner was unsuitable for parole primarily upon his commitment offense, but also cited his previous record of violence, history of unstable and tumultuous relationships with others, extensive criminal history, and failure to benefit from society's previous attempts to correct his criminality. (*See id*., Ex. 2 at 99-103.) *See also* 15 CCR § 2402(b) (requiring the Board to consider a prisoner's "past criminal history, including involvement in other criminal misconduct which is reliably documented"); 15 CCR § 2402(c)(1) (providing that a commitment offense carried out "in an especially heinous, atrocious, or cruel manner" constitutes an unsuitability factor tending to indicate unsuitability

REPORT AND RECOMMENDATION -11

for parole); 15 CCR § 2402(c)(2) (providing that a prisoner's "previous record of violence," such as inflicting or attempting to inflict serious injury on a victim, constitutes an unsuitability factor tending to indicate unsuitability for parole); 15 CCR § 2402(c)(3) (providing that a prisoner's "history of unstable or tumultuous relationships with others" constitutes an unsuitability factor tending to indicate unsuitability for parole). After considering all reliable evidence in the record, the Board concluded that evidence of petitioner's positive behavior in prison did not outweigh evidence of his unsuitability for parole. (*See* Dkt. 7, Ex. 2 at 110.)

With regard to the circumstances of the commitment offense, the Board concluded it was carried out in an especially heinous, atrocious, or cruel manner. (*See id*. at 99.) *See also* 15 CCR § 2402(c)(1). After observing his estranged wife's babysitter slap his five-year-old daughter on the hand, petitioner shouted insults at her, threatened to kill her, and slapped her. (*See* Dkt. 7, Ex. 2 at 12-13.) When De La Cruz attempted to intervene, petitioner pulled a knife and stabbed him. (*Id*. at 14.) Petitioner and De La Cruz then engaged in a fight that ended with petitioner killing De La Cruz by knocking him to the ground with a chair, stabbing him a total of four times, and striking him twice in the head with a crowbar. (*Id*.) Based upon these facts in the record, as well as petitioner's own comments regarding the offense during the hearing, the Board found that the murder was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering, and the victim was abused. (*See id*. at 99.) *See also* 15 CCR § 2402(c)(1)(C) and (D). The Board also found that petitioner's motive for the crime, anger resulting from a babysitter slapping his daughter's hand in order to discipline her, was very trivial in relation to the offense. (*See id*. at 99.) *See also* 15 CCR § 2402(c)(1)(E). The evidence of the circumstances surrounding petitioner's commitment offense and the trivial motive provide some evidence to support the Board's finding that the

REPORT AND RECOMMENDATION -12

murder was carried out in an especially heinous, atrocious, or cruel manner.

The second unsuitability factor relied upon by the Board was petitioner's previous record of violent and assaultive behavior. (*See* Dkt. 7, Ex. 2 at 101.) *See also* 15 CCR § 2402(c)(2). The Board found that petitioner's "four separate felony convictions for assault with a deadly weapon," all of which involved a knife, constituted some evidence that petitioner had previously inflicted or attempted to inflict serious injury on a victim. (*See* Dkt. 7, Ex. 2 at 101.) Petitioner's four prior convictions for assault with a deadly weapon clearly provide some evidence to support the Board's finding that petitioner has a record of previous violent behavior.

The third unsuitability factor relied upon by the Board was petitioner's unstable social history. (*See* Dkt. 7, Ex. 2 at 101.) *See also* 15 CCR § 2402(c)(3). The Board based its finding upon petitioner's previous conviction for stabbing his girlfriend, who later became his wife, after beating her and threatening to kill her. (*See* Dkt. 7, Ex. 2 at 101.) The Board also considered the fact that petitioner had previously stabbed his brother-in-law De La Cruz in 1978, and then murdered him during the instant commitment offense. (*See id*. at 101-02.) Petitioner's history of assaulting his wife, and assaulting and later killing his brother-in-law, provide some evidence to support the Board's finding that petitioner has a history of unstable or tumultuous relationships with others.

The final two factors cited by the Board to deny parole were petitioner's extensive criminal history, and failure to benefit from society's previous attempts to correct his criminality. (*See id*. at 102.) The applicable guidelines direct the Board to consider all relevant and reliable information, which includes "a prisoner's past criminal history," as well as a prisoner's "behavior before, during, and after [the base and other commitment offenses]."

REPORT AND RECOMMENDATION -13

*See* 15 CCR § 2402(b). As a result, the Board properly relied upon petitioner's arrests and convictions for numerous burglaries, assaults with a deadly weapon, battery on a peace officer, petty theft, disturbing the peace, escape, grand theft auto, possession and manufacture of a dangerous weapon, cultivating marijuana, assault by a prisoner, and obstructing and resisting an executive officer. (*See* Dkt. 7, Ex. 2 at 102-03.) The Board also properly considered evidence of petitioner's failure to benefit from society's previous attempts to correct his criminality, such as his failure to succeed on prior grants of both juvenile and adult probation, prior county jail time, prior commitment to the Youth Authority, and the fact that he is currently serving his fifth term in the Department of Corrections. (*See id*. at 102.) Petitioner's former membership in the Nuestra Familia was also noted by the Board. (*See id*. at 103.) Thus, there is clearly some evidence in the record to support the Board's findings regarding petitioner's extensive criminal history, and failure to benefit from society's previous attempts to correct his criminality.

Contrary to petitioner's argument that the Board failed to consider nearly all the parole suitability rules which favored petitioner, the Board acknowledged that petitioner has made realistic plans for release and developed marketable skills. (*See* Dkt. 7, Ex. 2 at 108.) *See also* 15 CCR § 2402(d)(8). Specifically, the Board cited petitioner's "adequate parole plans," including an employment offer and marketable trade in silk screening. (*See* Dkt 7, Ex. 2 at 108.) The Board also considered petitioner's most recent psychological evaluation, which assessed petitioner as presenting a low risk of violence if released on parole. (*See id*. at 107.) Finally, the Board commended petitioner for attending AA, although it also recommended he demonstrate a greater commitment to the program in the future. (*See id*. at 82-85, and 107-08.) It is therefore an inaccurate characterization of the record to say that the

Board failed to consider evidence that favored petitioner, or found him unsuitable for parole based solely upon the facts of the commitment offense.

B.   *State Court Proceedings*

Petitioner's habeas petitions filed in the California Court of Appeal and California Supreme Court contained the same claims as his Contra Costa County Superior Court petition, and both petitions were summarily denied. (*See* Dkt. 7, Exs. 5-8.) The parties agree that petitioner has properly exhausted his state court remedies, and timely filed the instant petition. (*See* Dkt. 1 at 6; Dkt. 7 at 4.) This Court reviews the Contra Costa County Superior Court's Order upholding the Board's decision to determine whether it meets the deferential AEDPA standards, as it is the last reasoned state court decision. *See Ylst*, 501 U.S. at 803-04.

In a reasoned decision denying petitioner's request for habeas relief, the Contra Costa County Superior Court asserted that based upon its review of the record, the Board's decision was supported by some evidence. (*See* Dkt. 7, Ex. 4 at 4.) The court thoroughly reviewed the facts of the commitment offense, the record of the parole hearing, and the Board's findings regarding both suitability and unsuitability factors. (*See id*. at 1-3.) Specifically, the court noted that the Board's findings regarding the commitment offense, petitioner's previous record of violence, and unstable social history were all supported by some evidence in the record. (*See id*. at 2.) The court also asserted that petitioner's contentions that the Board based its decision solely upon the facts of the commitment offense, without considering information that suggested petitioner's suitability for parole, were inaccurate. (*Id*. at 4.) Consequently, the court upheld the Board's decision that the positive aspects of petitioner's behavior did not outweigh the factors of unsuitability, and that petitioner would pose an unreasonable risk of danger to society or threat to public safety if released. (*See id*. at 2.)

As stated above, it is beyond the authority of a federal habeas court to determine whether evidence of suitability outweighs the circumstances of the commitment offense, together with any other reliable evidence of unsuitability for parole. The Board has broad discretion to determine how suitability and unsuitability factors interrelate to support its conclusion of current dangerousness to the public. *See Lawrence*, 44 Cal.4th at 1212. Although the Board praised petitioner's adequate parole plans and vocational progress in prison, it determined that petitioner's commitment offense, previous record of violence, history of unstable and tumultuous relationships with others, extensive criminal history, and failure to benefit from society's previous attempts to correct his criminality indicate that he remains an unreasonable risk of danger to society if released on parole. Because the state court decision upholding the Board's findings satisfies the "some evidence" standard, there is no need to reach respondent's argument that another standard applies.

VII. CONCLUSION

Given the totality of the Board's findings, there is some evidence that petitioner's release as of August 24, 2005, the date of the Board's decision, would have posed an unreasonable risk to public safety. The Contra Costa County Superior Court's Order upholding the Board's decision was therefore not contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of facts. I therefore recommend that the Court find that petitioner's due process rights were not violated, and that it deny his petition and dismiss this action with prejudice.

This Report and Recommendation is submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with this Report and Recommendation, any party may file written

REPORT AND RECOMMENDATION -16

01 objections with this Court and serve a copy on all parties.  Such a document should be

02 captioned "Objections to Magistrate Judge's Report and Recommendation."  Failure to file

03 objections within the specified time may waive the right to appeal the District Court's Order.

04 *See Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  A proposed order accompanies this

05 Report and Recommendation.

DATED this 15th day of May, 2009.

/s/ John L. Weinberg
JOHN L. WEINBERG
United States Magistrate Judge

REPORT AND RECOMMENDATION -17